UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20306-CR-ALTONAGA

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.

**JHONATHAN ALFONSO,**

        **Defendant.**
_____/

## MOTION TO DISMISS INDICTMENT

The defendant, Jhonathan Alfonso, by and through the undersigned counsel, and pursuant to Fed. R. Crim. P. 12(b), respectfully moves this Honorable Court to dismiss the indictment for lack of subject matter and personal jurisdiction, unconstitutionality of the statute as applied, violations of Fed. R. Crim. P 4 and 5, unreasonable delay in presentment to a magistrate, and outrageous government conduct. In support, Mr. Alfonso states the following:

**Procedural History**

1. According to the allegations in the criminal complaint, Mr. Alfonso was arrested on May 1, 2021, aboard a vessel located in the Caribbean Sea, "approximately 69 nautical miles south of Santo Domingo, Dominican Republic." DE 1:2.

2. According to the complaint, Mr. Alfonso and two co-defendants were "detained and transferred to the United States Coast Guard Cutter" CHARLES

DAVID. DE 1:5. The defendants were then transported, aboard the CHARLES DAVID, to the District of Puerto Rico.

3. For reasons that are not yet established in the record, the journey took eleven (11) days.

4. As a point of reference, a website advertising a thrice-weekly ferry from Santo Domingo, Dominican Republic, to San Juan, Puerto Rico states that the travel-time is approximately 13 hours. [1]

5. On either May 11 or 12, 2021– after Mr. Alfonso had already been a prisoner of the United States Coast Guard for at least 10 days – a criminal complaint was filed in the Southern District of Florida, charging Mr. Alfonso and his co-defendants with conspiracy and possession with intent to distribute cocaine, while onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) & 70506(b), also known as the "Maritime Drug Law Enforcement Act" or "MDLEA." *See* DE 1.[2]

6. Mr. Alfonso had his first appearance before a magistrate judge in the District of Puerto Rico, by way of video-teleconference, on May 12, 2021. *See* DE 5:6 ("Rule 5(c)(3)/ Rule 40 Documents received from District of Puerto Rico".

---

[1] *See* https://www.directferries.com/santo_domingo_san_juan_ferry.htm (Accessed Oct. 19, 2021).

[2] The docket sheet indicates that the complaint was filed on May 11, 2021, but the document is dated as being filed on May 12, 2021. The docket sheet further documents the "Arrest of Jhonathan Alfonso, Jose Jorge Kohen, Jose Miguel Rosario-Rosas in District of Puerto Rico" as occurring on May 12, 2021.

7. On May 13, 2021, an indictment was returned by the grand jury, charging Mr. Alfonso with one count of conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b); and one count of possessing with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1). DE 2.

8. Mr. Alfonso was not transferred to the Southern District of Florida for another three months. His first appearance in this district occurred on August 23, 2021. DE 13.

9. Mr. Alfonso now moves this Honorable Court to dismiss the indictment based on a lack of jurisdiction and the unconstitutionality of the Maritime Drug Law Enforcement Act (46 U.S.C. § 70503 et. seq.) as applied to his offense.  (Issue I). Mr. Alfonso was arrested in the Exclusive Economic Zone of the Dominican Republic, which is not part of the "High Seas" as defined by customary international law.  This offense therefore falls outside of Congress' limited Article I Section 8, Clause 10 authority to prosecute "Felonies on the high Seas," and the indictment must be dismissed.

10. In Issue II, Mr. Alfonso argues for preservation purposes that Congress lacks the Article I authority to regulate extraterritorial drug trafficking offenses bearing no nexus to the United States. He further maintains that the Court's exercise of jurisdiction over him violates due process because his offense lacked any ties to the United States.

12. Finally, in Issue III, Mr. Alfonso moves the Court to dismiss the indictment as a sanction for the government's unlawful, unreasonable, "outrageous" conduct in detaining him for an extended period of time without charges being filed or presenting him to a magistrate judge -- such that Mr. Alfonso was held a prisoner of the United States in the absence of any judicial oversight, whatsoever, for a period of at least 10 days.

Because it will be necessary to establish both the government's reasons for the delay, as well as the conditions under which he was detained, Mr. Alfonso respectfully moves the Court for an evidentiary hearing.

## MEMORANDUM OF LAW

**I.    The United States' authority pursuant to the Maritime Drug Law Enforcement Act is limited to offenses occurring on the High Seas; because this offense took place within the Dominican Republic's Exclusive Economic Zone, it did not occur on the "High Seas" and therefore the Indictment must be dismissed.**

Congress' authority to enact 46 U.S.C. § 70501 *et. seq.*, emanates solely from its Article I, Section 8, Clause 10 power to "define and punish Piracies and Felonies committed on the high Seas." *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012) (holding that Congress could not proscribe drug trafficking under the Offences Clause of Art. I, Sec. 8, cl. 10, because it is not an offense against the Law of Nations); *United States v. Davila-Mendoza*, 972 F.3d 1264 (11th Cir. 2020) (holding that Congress lacked the power to enact the statute pursuant to the Foreign Commerce Clause and rejecting the government's alternative argument that the statute was passed as a necessary and proper exercise of the Treaty power). Accordingly, Congress's power to act under this Clause is limited to offenses

4

"committed on the high Seas." *See Bellaizac-Hurtado*, 700 F.3d at 1258 (holding "that Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama."). Because this offense did not occur on the "high Seas," the allegations in the indictment fall outside of Congress's enumerated powers and this Court lacks jurisdiction to adjudicate the offense. Stated alternatively, the 46 U.S.C. § 70503 et. seq., the Maritime Drug Law Enforcement Act ("MDLEA") is unconstitutional as applied to Mr. Alfonso's conduct.

### 1. The Felonies Clause is "textually limited to conduct on the high seas."

Article I, Section 8, Clause 10 grants Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. CONST. art. I, § 8, cl. 10. "The Supreme Court has interpreted that Clause to contain three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations." *Bellaizac-Hurtado*, 700 F.3d at 1249. The only clause potentially applicable to the prosecution herein is the Felonies Clause. *See id*. "[T]he Felonies Clause," however, "is textually limited to conduct on the high seas." *Belllaziac-Hurtado*, 700 F.3d at 1248 (citing U.S. Const., Art. I, § 8, cl. 10). Furthermore, "for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in [the MDLEA], the Government must preliminarily show that the conspiracy's vessel was, ***when apprehended***, subject to the jurisdiction of the United States." *United*

*States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016) (emphasis added) (quoting *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008) (citation omitted)).

The question is thus whether the waters located within the Dominican Republic's "Exclusive Economic Zone" are part of the high Seas within the meaning of Article I, Section 8, Clause 10. They are not.

### 3. The Exclusive Economic Zone is not the "High Seas".

The Exclusive Economic Zone ("EEZ") was recognized in the 1982 United Nations Convention on the Law of the Seas ("UNCLOS"), 1833 U.N.T.S. 397 (attached hereto as Exhibit A).

> Under customary international law as reflected in Article 55 of the 1982 United Nations Convention on the Law of the Sea, and with respect to other nations, exclusive economic zone means the waters seaward of and adjacent to the territorial sea, not extending beyond 200 nautical miles from the territorial sea baseline, as recognized by the United States.

33 C.F.R. § 2.30(b).

Article 55 of UNCLOS states: "The exclusive economic zone is an area beyond and adjacent to the territorial sea, subject to the specific legal regime established by this Part, under which the rights and jurisdiction of the coastal State and the rights and freedoms of other States are governed by the relevant provisions of this Convention." Under the UNCLOS, coastal states have sovereign rights regarding the conservation, management, and exploitation of natural resources within their EEZ. Under Article 58, however, all states may enjoy the freedoms of navigation and overflight, as well as other "internationally lawful uses of the sea" within the EEZ.

6

The EEZ is thus neither territorial waters, nor the high seas. It is something distinct, which contains features of both. What is significant for present purposes, however, is that under "customary international law," the EEZ is *not* the High Seas.

> Under customary international law as reflected in the 1982 United Nations Convention on the Law of the Sea and without prejudice to high seas freedoms that may be exercised within exclusive economic zones pursuant to article 58 of the United Nations Convention on the Law of the Sea, and unless the context clearly requires otherwise . . . **high seas means all waters that <u>are not</u> the exclusive economic zone** (as defined in § 2.30), territorial sea (as defined in § 2.22), or internal waters of the United States or any other nation.

33 C.F.R. § 2.32(d)(emphasis added). While other definitions of the "EEZ" may be found, [3] it is this definition of "high seas" – provided by customary international law – that is relevant here.

Article I, section 8, clause 10 grants Congress power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Laws of Nations." U.S. Const. art. I, sec. 8, cl. 10. In *Bellaizac-Hurtado*, 700 F.3d at 1248, the Eleventh Circuit recognized that this Clause grants Congress three different powers: "the power to define and punish piracies, the power to define and punish felonies committed on the high seas, the power to define and punish offenses against the law of nations." *Id*. at 1248 (citation omitted). The power to "define and punish" in each phrase is the same – and emanates from the singular use of the terms.

---

[3] In a provision of the C.F.R. immediately preceding the one quoted above, the "high seas" is defined to *include* the EEZ for certain purposes. See 33 C.F.R. § 2.32(c) ("For the purposes of 14 U.S.C. 522, 14 U.S.C. 545, 33 U.S.C. 409, and 33 U.S.C. 1471 et seq., high seas includes the exclusive economic zones of the United States and other nations, as well as those waters that are seaward of territorial seas of the United States and other nations."). But this definition has no bearing on the meaning of Article I, for reasons discussed *infra*.

In *Bellaizac-Hurtado*, the Eleventh Circuit held that the "text, history, and structure of the Constitution confirm that the power to 'define' is limited by the law of nations." *See id.* at 1249. ("The power to 'define' offenses against the law of nations does not grant Congress the authority to punish conduct that is not a violation of the law of nations."). "During the Founding period," the court explained, "the word 'define' meant [t]o give the definition; to explain a thing by its qualities' and 'to circumscribe; to mark limits." *Id.* (citations omitted). "These definitions reveal that the word 'define' would not have been understood to grant Congress the power to create or declare offenses against the law of nations, but instead to codify and explain offenses that had already been understood as offenses against the law of nations." Thus, "[t]he insertion of the power to 'define' enabled Congress to provide notice to the people through codification; it did not enable Congress to create offenses that were not recognized by the law of nations." *Id.* at 1250.

For the same reason, the power to "define" felonies on the high seas does not give Congress the authority to recast the boundaries of the "high Seas" in order to expand its own sphere of authority. Instead, the "high Seas" referenced in Article I must be construed according to the definition of the high seas accorded by customary international law.

This limitation is confirmed by our constitutional structure. In *Bellaizac-Hurtado*, the Court wrote: "If Congress could define any conduct as 'piracy' or as a 'felony' or an 'offence against the law of nations,' its power would be limitless and contrary to our constitutional structure." *Id.* Similarly here, the locus of the high Seas

8

provides a substantive limit on Congress' authority to "define" felonies under Clause 10. If Congress were permitted to redefine the "high Seas" as it so chose, it could greatly expand the authority given to it by the Framers, in contravention of the very notion of enumerated powers. *See id.* For these reasons, this Court, too, should "look to international law to ascertain the scope" of the High Seas under Clause 10. *See id.*; *Cf. id.* at 1260 (Barket, J., specially concurring)

In summary, Congress' authority to punish felonies on the high seas is limited to the "high seas" as that term is defined by customary international law. And that definition, as discussed above, excludes the EEZ. To be clear, Mr. Alfonso does not maintain that the EEZ is the same as a nation's "territorial waters. The UNCLOS makes plain, however, that the EEZ is ***not*** the "high seas." And because Mr. Alfonso was not arrested on the high seas, the United States lacks jurisdiction over his offense. His offense fell outside of Congress' limited powers under Article I, and this Court is without subject matter jurisdiction over his offense. Wherefore, the indictment must be dismissed.

## II. Congress's power under the Felonies Clause is limited to offenses bearing a nexus to the United States and the exercise of jurisdiction over Mr. Alfonso in this case violates due process.

Because neither Mr. Alfonso nor his offense had any prior ties to the United States, the indictment must be dismissed because (1) Congress's Article I authority under the Felonies Clause does not extend to felonies bearing no ties to the United States; and (2) this Court's exercise of *in personam* jurisdiction over Mr. Alfonso violates the Due Process Clause of the United States Constitution.

1. The MDLEA exceeds Congress's Art. I, § 8, cl. 10 power to define and punish Felonies on the High Seas, because Congress's power under the Felonies Clause does not extend to drug trafficking offenses bearing no connection to the United States. *See United States v. Angulo-Hernández*, 576 F.3d 59, 60 (1st Cir. 2009) (Torruella, J., dissenting from the denial of en banc review) ("The term "Felonies" has not been read to include all felonies, but rather only felonies with an adequate jurisdictional nexus to the United States.") (citing *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 189 (1820)). *See generally also* Eugene Kontorovich, The "Define and Punish" Clause and the Limits of Universal Jurisdiction, 103 Nw. U. L .Rev. 149, 163-4 (Winter 2009) (discussing the history of Art. I, § 8, cl. 10, and arguing that the Felonies Clause is limited to felonies with a nexus to the United States).

Mr. Alfonso acknowledges that the Eleventh Circuit has rejected challenges to the MDLEA's constitutionality as applied to unregistered vessels on the high seas. *See, e.g.*, *United States v. Campbell*, 734 F.3d 802, 806 (11th Cir. 2014); *United States v. Cruickshank*, 837 F.3d 1182, 1190 (11th Cir. 2016); *United States v. Estupinan*, 453 F.3d 1336, 1338 n.2 (11th Cir. 2006); *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003); *United States v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982). Therefore, if the Court finds that the MLDEA may constitutionally be enforced in another nation's Exclusive Economic Zone, Mr. Alfonso maintains this argument for purposes of further review.

2. Although the Eleventh Circuit has reviewed Due Process challenges to the Maritime Drug Law Enforcement Act (MDLEA) in other contexts, it is believed that the court has never ruled on the narrow "as applied" challenge presented by this case, which is based on the Dominican Republic's interest in regulating its Exclusive Economic Zone. Whatever interest the United States may have in prosecuting drug trafficking cases occurring on the high seas, there is a clear diminishment of the United States' legitimate exercise of authority where another nation has a clearly-defined sphere of interest and authority.

Mr. Alfonso respectfully maintains that the Court's exercise of jurisdiction in this case is inconsistent with "traditional notions of fair play and substantial justice." *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (holding that, in order to subject a defendant to a civil judgment, due process requires that the individual "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'") (internal citation omitted). Mr. Alfonso was neither present in the United States nor any United States territory at the time of the offense. He is not a U.S. national, nor was he domiciled here prior to his arrest. He carried on no business or activity in the United States. There is no evidence that the drugs were destined for the United States, or that the offense would have a direct and foreseeable effect within the United States. The exercise of civil jurisdiction under circumstances such as these would clearly violate due process. *See id.* There is no reason why the Due Process Clause should have any less force in limiting the criminal jurisdiction of

11

United States courts. *See also United States v. Zakharov,* 468 F.3d 1171, 1177 (9th Cir. 2006) (internal quotation omitted) (holding, in cases involving registered vessels, the court has held that due process requires a "nexus between the United States and the defendant's activities," that is analogous to the "minimum contacts" required in personal jurisdiction analysis.). Wherefore, the exercise of jurisdiction over Mr. Alfonso is unreasonable and inconsistent with Due Process.

### III. The Indictment should be dismissed as a sanction for the government's violations of Federal Rules of Criminal Procedure 5(a) and (b), and outrageous government conduct, in detaining Mr. Alfonso for 11 days without judicial oversight.

Finally, Mr. Alfonso moves this Court to dismiss the Indictment based on the United States' outrageous misconduct in holding him for a period of at least 10 days without charges being filed, and unreasonably failing to bring him before a magistrate judge for 11 days after his arrest. The Federal Rules of Criminal Procedure contain safeguards to ensure that individuals are not held for unnecessary or unreasonable periods of time without judicial oversight. The Supreme Court has reviewed these procedural rights and provided guideposts in terms of hours – not days or weeks – in which law enforcement must comply. These protections were not only flagrantly violated, ***but wholly and deliberately ignored*** in this case. Because this conduct is part of a documented pattern of the United States' willful violation of defendants' constitutional rights, no sanction lesser than dismissal of the indictment will suffice.

### A. The United States violated Rule 5(a) by failing to bring Mr. Alfonso before a magistrate judge "without unnecessary delay."

Federal Rule of Criminal Procedure 5(a)(1)(B) states: "A person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." This requirement stems from the common law, which "obliged an arresting officer to bring his prisoner before a magistrate as soon as he reasonably could." *Corley v. United States*, 566 U.S. 303, 306 (2009) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 61–62 (1991) (SCALIA, J., dissenting)). "This 'presentment' requirement tended to prevent secret detention and served to inform a suspect of the charges against him, and it was the law in nearly every American State and the National Government." *Id.* (citations omitted).

In *Mallory v. United States*, 354 U.S. 449, 455 (1957) and *McNabb v. United States*, 318 U.S. 332, 345 (1943), the Court held that confessions produced as a result of an unnecessary or unreasonable delay in presentment must be suppressed. Congress later passed 18 U.S.C. § 3501, in part in an effort to limit these holdings, and drew a line at 6 hours, after which time additional judicial scrutiny of a confession is required. *See United States v. Corley*, 129 S.Ct. 1558, 1571 (2009) (holding that where a confession was given more than 6 hours after arrest and before presentment, a district court facing a suppression claim must find whether the delay was "unnecessary and unreasonable."). Obviously, it would not have been possible for the Coast Guard to bring Mr. Alfonso before a magistrate within 6 hours of his arrest.

These authorities nonetheless established that the 11-day detention of Mr. Alfonso in this case was far outside the boundaries of what may be deemed a reasonable delay.

### B. The United States violated Rule 5(b) by failing to secure a criminal complaint until 10 days after Mr. Alfonso's arrest.

The government similarly made no effort to comply with Fed. R. Crim. P. 5(b), which states: "If a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed."[4] This requirement grew out of the Fourth Amendment's protection against unreasonable seizures – and is generally held to require a judicial determination of probable cause within 48 hours of an arrest. *See Gernstein v. Pugh* 420 U.S. 103 (1975). Any detention beyond that period without a judicial determination of probable cause is permissible only in the case of "a bona fide emergency or other extraordinary circumstance." *See County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). Even a delay of less than 48 hours will be impermissible if it is unreasonable. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside,* 500 U.S. at 56.

---

[4] Because this offense as committed outside the United States, the statute provides for venue in any district. *See* 46 U.S.C. § 70504(b)(2) ("Venue.--A person violating section 70503 or 70508-- (1) shall be tried in the district in which such offense was committed; or (2) if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district, may be tried in any district.").

14

In *Gerstein*, the Court analyzed the prompt determination requirement from the perspective of the Fourth Amendment, in recognition of that Amendment's historic role in protecting individuals against unreasonable seizures. Mr. Alfonso maintains that his capture on the high seas, and detention by the Coast Guard for more than 10 days without charges ever being filed, additionally violates his rights under the Due Process Fifth Amendment, as well as under Rule 5.

### C. The delay was unnecessary and unreasonable

From the face of the record, there appears to be no legitimate reason for the delay. A ferry boat that regularly travels from Santo Domingo, Dominican Republic, to San Juan, Puerto Rico, advertises the trip as lasting approximately 13 hours. *See* n.1, *infra*. There is no justifiable reason why a journey from a point 69 nautical miles south of Santo Domingo, to San Juan, should have taken 11 days.

It is anticipated that the government will respond that the Coast Guard detained Mr. Alfonso for this period of time so that it could continue its previously-scheduled mission without the inconvenience of having to bring Mr. Alfonso to shore. The convenience of the arresting officers, however, is a wholly unacceptable justification for a prisoner's prolonged detention at sea, without process, and in the absence of access to counsel and the courts.

### D. Dismissal is the appropriate sanction.

The government's actions in this case evince a blatant disregard for the law and warrant dismissal – whether as a sanction for the Rule 5 violations, because of

15

the unreasonable 11-day delay in presentment to a magistrate, or under the doctrine of outrageous government conduct.

The doctrine of "outrageous government conduct" emanates from the observation of then-Justice Rhenquist that the Court "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Such a situation might arise where the government's conduct violates "'fundamental fairness,' or is '"shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *See id.* (citation omitted). Arresting foreign nationals at sea and subjecting them to prolonged detention without access to the courts surely meets this standard. *See* Seth Freed Wessler, *The Coast Guard's 'Floating Guantánamos,'* N.Y. Times Magazine, Nov. 11, 2020 at 6 ("Maritime- and human-rights-law scholars caution that the delayed periods of detention employed by the United States in its antidrug campaign run counter to international human rights norms.") (attached hereto as Appendix B).

Worse still, detainees such as Mr. Alfonso are routinely kept in abhorrent conditions. In *The Coast Guard's 'Floating Guantánamos,'* Wessler described the experience of individuals who are seized in international waters, detained by the Coast Guard under suspicion of drug trafficking, and "carried around the ocean for weeks or months as the American ships continue their patrols." Appendix B at 1. The arrestees were not told where they were going, not given lawyers, and not allowed to

contact their consulates, or even their families. Instead, they were directed to change into "papery" jump suits, cuffed at the ankles, and chained to a cable running across the ground. The men were given "rubber mats" to serve as beds, and forced to defecate into a bucket. Appendix B at 1, 4. They subsisted mainly on inadequate portions of beans and rice, and reported losing as much as 20 and even 50 pounds during their ordeal. Appendix B at 5.

Two years after his arrest at sea, one man described nightmares about waking up in chains:

> I would wake up feeling the chains digging into my ankle and jerk my leg thinking I was shackled, and feel my free leg and be relieved that I was not chained there on the boat. I would wake up sweating; almost crying, thinking I was still chained. Over time it passes. But a thing like this, it never leaves you.

Appendix B at 8.

In this case, Mr. Alfonso was similarly chained by the ankle to the deck for the entirety of the 11-day delay. He was only unchained to go to the bathroom. The shelter provided on two of the ships he was on provided inadequate protection from the sun or the rain. He was fed inadequate portions of rice and beans once at 10:00AM and a second time at 5:00PM. He was given no food in-between. He slept on the floor on a thin mat. This egregious disregard for the rights of foreign nationals arrested at sea has become policy. *See* Appendix B at 5. Mr. Alfonso's prolonged detention without charge was not caused by any emergency, nor any extraordinary event. It is part of an ongoing pattern of calculated disregard for the rights of the accused. Under these circumstances, no sanction less than outright dismissal will suffice.

**E. Request for a hearing.**

Because the specific facts of the government's reasons for the delay, as well as the conditions under which Mr. Alfonso was kept captive prior to his entry into the United States are relevant to the claims presented in Issue III, Mr. Alfonso respectfully asks for an evidentiary hearing.

## CONCLUSION

WHEREFORE, for the above reasons, Mr. Alfonso moves this Court to dismiss the indictment. He further requests an evidentiary hearing.

> Respectfully submitted,
>
> **MICHAEL CARUSO**
> **FEDERAL PUBLIC DEFENDER**
>
> By: _/s/Julie Holt_
> Assistant Federal Public Defender
> Florida Bar No.: 95997
> 150 W Flagler Street, Suite 1700
> Miami, Florida 33130
> Tel: 305-530-7000
> julie_holt@fd.org

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on **October 21, 2021**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              */s/Julie Holt*
                                              Julie Holt