**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-20306-CR-ALTONAGA**

**UNITED STATES OF AMERICA**,

      Plaintiff,

vs.

**JHONATHAN ALFONSO**,
**JOSE JORGE KOHEN**, and
**JOSE MIGUEL ROSARIO-ROJAS**,

      Defendants.

_____/

## <u>ORDER</u>

    **THIS CAUSE** came before the Court on Defendant, Jhonathan Alfonso's Motion to Dismiss Indictment [ECF No. 20], filed on October 21, 2021.   Co-Defendants, Jose Jorge Kohen and Jose Miguel Rosario-Rojas, joined in the Motion.  (*See* Oct. 25, 2021 Order [ECF No. 27] (Kohen); Oct. 26, 2021 Order [ECF No. 32] (Rosario-Rojas)).  Defendants move to dismiss the Indictment [ECF No. 2] for lack of subject matter and personal jurisdiction.  (*See generally* Mot.).  The Government filed a Response [ECF No. 35], to which Defendants filed a Reply [ECF No. 38].

    The Court held an evidentiary hearing on November 18, 2021.  (*See* Minute Entry [ECF No. 46]).  The Court has carefully reviewed the parties' written submissions, the record, and applicable law.  For the following reasons, the Motion is denied.

    *Facts*.  On May 1, 2021, United States law enforcement arrested Defendants aboard a vessel located in the Caribbean Sea "approximately 69 nautical miles south of Santo Domingo, Dominican Republic."  (Mot. 1 (quotation marks omitted)).  At the time of arrest, Defendants claimed Colombian nationality for the vessel.  (*See* Compl., Aff. Support Criminal Compl. [ECF

No. 1] 5).[1]   Because the Colombian Government could neither confirm nor deny registry of the vessel, the vessel was treated as one without nationality and therefore subject to the jurisdiction of the United States.  (*See id.*).  A search of the vessel yielded 289 kilograms of cocaine.  (*See id.*).

On May 7 around 3:30 p.m. local time, Defendants were transferred from the *USS Wichita* to the *USCGC Joseph Tezanos*, a 154-foot fast response cutter homeported in San Juan, Puerto Rico.  (*See* Resp. 2).  On May 9 around 6:00 p.m. local time, Defendants were transferred to the *USCGC Winslow Greisser*, another 154-foot fast response cutter stationed in San Juan, Puerto Rico.  (*See id.*).  On May 11 around 9:44 a.m. local time, Defendants were transferred to the *USCGC Charles David Jr.*, a 154-foot fast response cutter homeported in Key West, Florida.  (*See id.*).  Early May 12, 2021, the *USCGC Charles David Jr.* brought Defendants into port in San Juan, where Defendants were turned over to the DEA shortly thereafter.  (*See id.*).

On May 11, 2021, the Government filed a criminal complaint in this District, charging Defendants under the Maritime Drug Law Enforcement Act (the "MDLEA"), 46 U.S.C. §§ 70501–70508, with one count of conspiracy to possess a controlled substance aboard a vessel, in violation of 46 U.S.C. section 70506(b); and one count of possession with intent to distribute a controlled substance aboard a vessel, in violation of 46 U.S.C. section 70503(a)(1).  (*See generally* Compl.).  The next day — the same day Defendants were turned over to the DEA in San Juan — Defendants appeared before a magistrate judge in the District of Puerto Rico via videoconference.  (*See* Mot. 2; Resp. 16).  A day later, a grand jury returned an Indictment charging Defendants with both of the counts enumerated in the Complaint.  (*See generally* Indictment [ECF No. 2]).  Defendants made their first appearances in this District on August 23, 2021.  (*See* Minute Orders [ECF Nos. 12–14]).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Defendants now move to dismiss the Indictment, arguing (1) the Government lacks authority under the MDLEA because their offenses occurred in the Dominican Republic's Exclusive Economic Zone; (2) the MDLEA is unconstitutional as applied because there is no nexus between them and the United States; and (3) the Indictment should be dismissed as a sanction for the Government's outrageous conduct and violations of Federal Rules of Criminal Procedure 5(a) and (b).   (*See generally* Mot.).

***Standard***.   Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."   *Id.* (alteration added).   A defendant may challenge an indictment on a variety of grounds, including lack of jurisdiction and prosecutorial misconduct.   *See United States v. Kaley*, 677 F.3d 1316, 1325–26 (11th Cir. 2012) (citations omitted).

In addressing a motion to dismiss an indictment, the court must accept the allegations of the indictment as true.   *See United States v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991); *see also United States v. Sampson*, 371 U.S. 75, 78–79 (1962).   The factual allegations in the indictment must be "viewed in the light most favorable to the government[.]"   *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (alteration added; citations omitted).

***Whether the Government lacks authority under the MDLEA***.   The MDLEA criminalizes drug trafficking on the high seas.   In enacting the MDLEA, Congress sought to address the "serious international problem" of drug trafficking aboard vessels, which it found "presents a specific threat to the security and societal well-being of the United States."   *United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006) (quotation marks and citation omitted).   To this end, Congress provided that the MDLEA applies to all cases where the alleged trafficking occurred on board a "vessel subject to the jurisdiction of the United States[,]" 46 U.S.C. § 70503(e)(1) (alteration

3

added) — "even though the act is committed outside the territorial jurisdiction of the United States[,]" *id.* § 70503(b) (alteration added).

The constitutionality of the MDLEA derives from Congress' power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl. 10 (alteration added). "The Supreme Court has interpreted that Clause to contain three distinct grants of power: to define and punish piracies, to define and punish felonies committed on the high seas, and to define and punish offenses against the law of nations." *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014) (citation omitted). In *United States v. Bellaizac-Hurtado*, the Eleventh Circuit found that the MDLEA, as applied to drug trafficking activities in the territorial waters of another nation, fell "outside of the power of Congress under the Offences Clause." 700 F.3d 1245, 1249 (11th Cir. 2012); *see also United States v. Matute*, No. 06-20596-cr, 2013 WL 6384610, *1 (S.D. Fla. Aug. 20, 2013). Nonetheless, the MDLEA remains constitutional under the Piracies Clause and Felonies Clause when applied to drug trafficking conduct on the high seas. *See Bellaizac-Hurtado*, 700 F.3d at 1257 ("Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies Clause, the Felonies Clause, and the admiralty power[.] And we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause." (alteration added; citations omitted)).

Defendants argue the Indictment must be dismissed because their offenses took place in the Dominican Republic's Exclusive Economic Zone — "the waters seaward of and adjacent to [a nation's] territorial sea, not extending beyond 200 nautical miles from the territorial sea baseline, as recognized by the United States." (Mot. 6 (alteration added; quoting 33 C.F.R. § 2.30(b))). According to Defendants, the Exclusive Economic Zone is not the high seas "as that term is defined

4

by customary international law"; therefore, "the United States lacks jurisdiction over [their offenses]." (*Id.* 9 (alterations added)).

Yet, courts — including the undersigned — have routinely held that the "United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts[.]" *Butler v. United States*, No. 13-22668-Civ, 2014 WL 12597847, at *2 (S.D. Fla. June 16, 2014) (alteration added; quotation marks omitted; quoting *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003)); *see also United States v. Oliveros-Estupinan*, 544 F. App'x 930, 933 (11th Cir. 2014) ("Generally, the United States 'recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts.'" (quoting *McPhee*, 336 F.3d at 1273)); *United States v. Williams*, 617 F.2d 1063, 1073 n.6 (5th Cir. 1980) ("This 12-mile limit includes the territorial sea, which extends to three miles from the coast, and the contiguous zone, which extends from three to 12 miles from the coast. . . .  The high seas lie seaward of the territorial sea and thus encompass the contiguous zone." (alteration added; citation omitted)); *United States v. Ruiz-Murillo*, No. 17-0003-cr, 2017 WL 1022807, at *8 (S.D. Ala. Mar. 16, 2017) ("The Court takes judicial notice that all of the listed sets of coordinates define locations that are far more than 12 miles beyond the coast of Colombia and therefore lie in international waters, as a matter of law." (footnote call number omitted; citing *McPhee*, 336 F.3d at 1273)), *aff'd*, 736 F. App'x 812 (11th Cir. 2018); *United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) ("The [Exclusive Economic Zone] bordering a particular nation's territorial sea is merely a part of the high seas where that nation has special economic rights and jurisdiction. . . . [A] nation's territorial waters generally extend to twelve nautical miles." (alterations added; citations

omitted)).[2]  Defendants provide no case where a court has held the Exclusive Economic Zone does not constitute the high seas for purposes of the MDLEA.  The Court will not be the first.

Given that Defendants were arrested 69 miles south of the Dominican Republic — well past that nation's territorial waters and therefore in the high seas — Defendants' argument fails. *See United States v. Matos-Luchi*, 627 F.3d 1, 2 n.1 (1st Cir. 2010) ("The area is outside Dominican territorial waters and considered the 'high seas' for purposes of the Coast Guard's enforcement jurisdiction, although within the Dominican Republic's exclusive economic zone[.]"  (alteration added; citations omitted)).

***Whether the MDLEA is unconstitutional as applied to Defendants***.  Defendants contend that because neither they nor their offenses "had any prior ties to the United States," the exercise of jurisdiction over Defendants violates their due process rights, and therefore the Indictment must be dismissed.  (Mot. 9).  Yet, Defendants acknowledge "that the Eleventh Circuit has rejected challenges to the MDLEA's constitutionality as applied to unregistered vessels on the high seas." (*Id.* 10 (citing *Campbell*, 734 F.3d at 806; *United States v. Cruickshank*, 837 F.3d 1182, 1190 (11th

---

[2] *See also, e.g.*, *Ortiz Llaguno v. United States*, No. 8:20-cv-234, 2020 WL 4506397, at *4 (M.D. Fla. Aug. 5, 2020); *Delgado-Pachay v. United States*, No. 8:20-cv-154, 2020 WL 1820506, at *3 (M.D. Fla. Apr. 10, 2020); *United States v. Aguino-Ramos*, 406 F. Supp. 3d 1308, 1313 (S.D. Ala. 2019); *United States v. Naranjo*, No. 8:06-cr-345, 2017 WL 11207268, at *2 (M.D. Fla. Nov. 8, 2017); *Riascos v. United States*, No. 8:14-cv-2558, 2017 WL 4640332, at *2 (M.D. Fla. Oct. 13, 2017); *United States v. Chaverra-Serna*, 8:13-cv-1412, 2015 WL 225763, at *2 (M.D. Fla. Jan. 16, 2015); *Michileno-Valencia v. Rothman*, No. 1:13-cv-1045, 2014 WL1048554, at *7–8 (N.D. Ala. Mar. 18, 2014); *Matute*, 2013 WL 6384610, at *6, *report and recommendation adopted*, 2013 WL 6212170 (S.D. Fla. Nov. 2013); *Guzman-Dearco v. United States*, No. 8:13-cv-1961, 2013 WL3992401, at *2–3 (M.D. Fla. Aug. 2, 2013); *Velasquez v. United States*, No. 8:13-cv-01960, 2013 WL 3992400, at *3–4 (M.D. Fla. Aug. 2, 2013); *Francis v. United States*, No. 8:13-cv-995, 2013 WL 1798961, at *2–3 (M.D. Fla. Apr. 29, 2013); *Pomare v. United States*, No. 8:13-cv-1087, 2013 WL 1775047, at *2 (M.D. Fla. Apr. 25, 2013); *Jori v. United States*, No. 8:13-cv-1000, 2013 WL 1729219, at *2–3 (M.D. Fla. Apr. 22, 2013); *Minotta-Rodriguez v. United States*, No. 8:13-cv-596, 2013 WL 828623, at *2–3 (M.D. Fla. Mar. 6 2013); *Orjuela-Medina v. United States*, Nos. 8:13-cv-378, 8:06-cv-2207, 8:07-cv-1840, 2013 WL 557221, at *2–3 (M.D. Fla. Feb. 14, 2013); *Alvarez-Figueroa v. United States*, No. 8:13-cv-394, 2013 WL 524863, at *2–3 (M.D. Fla. Feb. 13, 2013); *Sarrias-Boya v. United States*, No. 8:13-cv-86, 2013 WL 12367010, at *2 (M.D. Fla. Jan. 31, 2013); *United States v. Espino-Macree*, No. 8:08-cr-451, 2013 WL 12333440, at *2 (M.D. Fla. Jan. 3, 2013).

Cir. 2016); *Estupinan*, 453 F.3d at 1338 n.2; *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003); *United States v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982))).  Instead, Defendants insist their case is different because they were arrested in the Dominican Republic's Exclusive Economic Zone.  (*See* Mot. 10–11).

But, as discussed, the Eleventh Circuit and other courts define the area outside of 12 miles from a nation's coast — and thus, a nation's Exclusive Economic Zone — as the high seas for purposes of the MDLEA.  *See, e.g.*, *McPhee*, 336 F.3d at 1273.  Because Defendants were arrested aboard a stateless vessel containing narcotics on the high seas, Defendants' constitutional challenge is precluded by Eleventh Circuit precedent.  *See, e.g.*, *Ruiz-Murillo*, 736 F. App'x at 817 ("Subsequent cases reaffirm our holding that the MDLEA does not require a nexus to the United States."  (citing *United States v. Wilchcombe*, 838 F.3d 1179, 1186 (11th Cir. 2016); *Cruickshank*, 837 F.3d at 1187–88)).

***Whether the Indictment should be dismissed as a sanction***.  According to Defendants, the Indictment should be dismissed as a sanction for the Government's violations of Federal Rules of Criminal Procedure 5(a) and 5(b) or, in the alternative, under the doctrine of outrageous government conduct.  (*See* Mot. 12–17).  Each argument is without merit.

*Federal Rule of Criminal Procedure 5(a)*.  Defendants argue the Indictment should be dismissed based upon the 11-day delay between Defendants' interdiction and initial appearances before a magistrate judge.  Under Federal Rule of Criminal Procedure 5(a)(1)(B), "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge[.]"  *Id.* (alterations added).

The Eleventh Circuit "expressly addressed 'unnecessary delay' under Rule 5(a)(1)(B)" in *United States v. Purvis*, 768 F.2d 1237, 1238–39 (11th Cir. 1985). *United States v. Cabezas-Montano*, 949 F.3d 567, 591 (11th Cir. 2020) (citing *id.*). In *Purvis*, the court stated that "the purpose of Rule 5(a) is to prevent oppressive police interrogations and other 'third-degree' tactics before bringing the accused in front of an officer of the court[.]" 768 F.2d at 1238 (alteration added; citing *Mallory v. United States*, 354 U.S. 449, 451–54 (1957)). Therefore, the court "held that various factors are considered in determining whether a delay is unnecessary, including: (1) the distance between the location of the defendant's arrest in international waters and the U.S. port he was brought to; (2) the time between the defendant's arrival at the U.S. port and his presentment to the magistrate judge; (3) any evidence of mistreatment or improper interrogation during the delay; and (4) any reason for the delay, like exigent circumstances or emergencies." *Cabezas-Montano*, 949 F.3d at 591 (citing *id.* at 1238–39).

The first three factors weigh in the Government's favor. First, Defendants were interdicted on the high seas far from U.S. soil — approximately 330 miles from San Juan. (*See* Resp. 13). At least some "part of the delay was necessitated by the fact that the arrest was made [] far from port on the high seas." *Purvis*, 768 at 1239 (alteration added) (finding 5-day delay in presentment reasonable considering the defendants were arrested 350 miles from Key West).

Second, once they arrived in San Juan, Defendants were presented to the magistrate judge within hours. (*See* Resp. 15–16). Considering Defendants needed to be admitted into the country by Customs and Border Protection and booked by the DEA before they could be taken to a courtroom, this short delay was reasonable. (*See id.*); *see also Purvis*, 768 at 1239 (finding delay of less than one day after the defendants arrived in Key West reasonable).

And third, there is no evidence Defendants were mistreated or improperly interrogated during the 11-day period. According to the Government, logs kept by the Coast Guard show that Defendants "were well fed with meals such as eggs, sausage and pancakes; burgers, hot dogs and salad; and steak, salad and green beans." (Resp. 15). They were also given "water, medical treatment, and clean clothing, and allowed to use the head and brush their teeth." (*Id.*). And Defendants were only interrogated after they were brought ashore and read their rights, which they waived. (*See id.*).

The fourth factor — the reason for the delay — is more complicated. When suspected drug smugglers are apprehended at sea, it takes time for law enforcement to decide where to prosecute the case, as the MDLEA provides that any person violating its provisions upon the high seas may "may be tried in any district." 46 U.S.C. § 70504(b)(2). This decision is complicated by the fact that the suspects are usually detained aboard vessels that resume normal patrol operations after the interdiction. As the Government explains:

> When an interdiction of drug smugglers occurs at sea, the Narcotics and Dangerous Drugs Section (NDDS) of the Criminal Division of the Department of Justice decides where the case will be prosecuted. Because the defendants are detained on ships which resume normal patrol operations after the interdiction and detention of the defendants, it commonly takes multiple days before sufficient information is available to inform the decision as to where to prosecute the case. Once a decision is made, the USCG must work out the logistics of transporting the detainees to the district where they will be prosecuted, or to another district if necessary due to ship availability and operational needs.

(Resp. 14).

The Government provided a Coast Guard duty officer's sworn statement to explain the 11-day delay before Defendants were presented to a magistrate judge. (*See* Lt. Paul Puddington Statement [ECF No. 43-1]; Nov. 18, 2021 Minute Entry). Defendants were arrested on May 1 and then detained aboard a patrolling U.S. vessel as the NDDS decided where to prosecute them. On

9

CASE NO. 21-20306-CR-ALTONAGA

May 7, the NDDS decided to prosecute Defendants in the Southern District of Florida, at which point the Coast Guard immediately looked at options for transferring the detainees and evidence to the DEA case agents from the District. At that time, there were no available cutters transiting from Puerto Rico to the Southeastern United States, and using one of the cutters patrolling the area near Puerto Rico would have left a significant law enforcement and search and rescue readiness gap. Instead, the case agents arranged to fly to Puerto Rico to receive Defendants and the evidence on May 12, the earliest date available to them. Defendants were delivered to the case agents on May 12.

At first glance, the 11-day delay appears to be justified by the ordinary logistical challenges involved in transferring detainees arrested aboard vessels on the high seas to land. Further review establishes this delay was unnecessary.

Defendants cross-examined the Coast Guard officer who provided the sworn affidavit at the November 18, 2021 evidentiary hearing. The officer testified that on May 7, the Coast Guard learned Defendants would be prosecuted in the Southern District of Florida, and DEA case agents from the District would fly to San Juan to take custody of Defendants on May 12. Defendants were then kept aboard various Coast Guard vessels at sea until the agents arrived in San Juan. The Coast Guard officer admitted there were several opportunities to deliver Defendants to land between May 7 and May 12.

At one point, the Coast Guard intentionally transferred Defendants off a vessel that was going to port in Puerto Rico and onto another vessel that would remain at sea. At another point, the vessel Defendants were located on rescued a migrant at sea and delivered the migrant to Puerto Rico but kept Defendants on board instead of delivering them with the migrant. According to the Coast Guard officer, the Coast Guard did not deliver Defendants to land earlier because it typically

10

delivers suspects directly to the case agents who will be prosecuting the case.  This explains why the Coast Guard intentionally waited to transfer Defendants until May 12, when the Southern District of Florida case agents would arrive.

The officer's testimony establishes that the delay was unnecessary.  The Coast Guard could have transferred Defendants to land earlier without causing any complications.  There simply were no exigent circumstances, such as in cases where there is delay because the Coast Guard needs another government's consent to take some action.  *See, e.g.*, *United States v. Castillo*, 899 F.3d 1208, 1217–18 (11th Cir. 2018) (Martin, J., concurring); *United States v. Stirling*, No. 11-20792-cr, 2012 WL 1200402, at *5 (S.D. Fla. Apr. 10, 2012); *United States v. Marin*, No. 8:19-cr-488, 2020 WL 7364601, at *13 (M.D. Fla. Apr. 24, 2020).  The Coast Guard waited multiple days to deliver Defendants to land merely because certain DEA case agents were not yet in San Juan.  But Defendants could have been processed by other law enforcement officers and brought before a magistrate judge earlier.  Under these facts, the Court cannot say the delay was necessary.

Nonetheless, "the remedy for a Rule 5(a) violation is suppression of evidence obtained during the delay not dismissal."  *Marin*, 2020 WL 7364601, at *13 (citing *United States v. Carruthers*, 458 F. App'x 811, 818 (11th Cir. 2012) ("The only remedy we have recognized for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation." (citation omitted)); *United States v. Bibb*, 194 F. App'x 619, 623 (11th Cir. 2006) ("In fact, we have never recognized dismissal of the indictment as a proper remedy for a Rule 5 violation." (citation omitted))).  Thus, Defendants are not entitled to the relief they seek.

*Federal Rule of Criminal Procedure 5(b)*.  Defendants contend the Indictment should be dismissed because the Complaint was not filed until 10 days after their arrests.  Under Federal Rule of Criminal Procedure 5(b), "[i]f a defendant is arrested without a warrant, a complaint

meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed." *Id.* 5(b) (alteration added).

The parties dispute whether Rule 5(b) is applicable to Defendants given that it is rooted in the Fourth Amendment, and Defendants are foreign nationals who were arrested on the high seas but were detained on U.S. ships in U.S. territorial waters. (*Compare* Resp. 18, *with* Reply 10). No matter. "The only remedy [the Eleventh Circuit] [has] recognized for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation." *Carruthers*, 458 F. App'x at 818 (alterations added; citation omitted). Consequently, this argument also fails.

*Outrageous government conduct*. Defendants maintain their alleged mistreatment as detainees aboard U.S. vessels and the 11-day delay in their presentment to a magistrate judge constitute outrageous government conduct warranting dismissal of the Indictment.

As an initial matter, the Eleventh Circuit has not adopted the outrageous government conduct doctrine. *See Marin*, 2020 WL 7364601, at *10 (citing *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011)). And "other Circuits have either questioned or rejected it." *Id.* (citations omitted).

"Outrageous government conduct occurs when law enforcement obtains a conviction for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees." *United States v. Cizkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) (citation omitted). In *Jayyousi*, the Eleventh Circuit stated: "[a]lthough we have never acknowledged the existence of the outrageous government conduct doctrine, we note that the actionable government misconduct must relate to the defendant's underlying or charged criminal acts." 657 F.3d at 1111 (alteration added). In that case, the defendant-appellant, who was convicted of conspiring to support terrorist activities, sought dismissal of his indictment due to

"alleged mistreatment he received at the brig after the conclusion of his criminal acts and prior to the indictment on the present charges." *Id.* at 1112.  The Eleventh Circuit found that, "even if [they] were to adopt [the outrageous government conduct doctrine], the doctrine [did] not apply in this situation" because the defendant-appellant did not "claim that the government caused him to leave the United States to be a jihad recruit." *Id.* (alterations added; citation omitted).

Similarly, the alleged mistreatment aboard U.S. vessels and delay in Defendants' prosecution has nothing to do with Defendants' underlying criminal conduct of drug trafficking.  For this reason, the outrageous government conduct doctrine would not apply even if the Eleventh Circuit were to adopt it.

In any event, Defendants have not shown any outrageous Government conduct.  As discussed, Defendants have not shown they were subject to mistreatment or improper interrogation.  And a delay in presentment of a few extra days than was necessary could hardly constitute outrageous conduct in the absence of mistreatment or improper interrogation.  Defendants' final argument is thus without merit.

* * *

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Indictment **[ECF No. 20]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of November, 2021.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record